UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ROBERT REPETTO, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No.12-4108 |
| v. | : | |
| MAGELLAN HEALTH SERVICES/EAP, THE FEDERAL AVIATION ADMIN., ALISON JOHNSTONE, and MARIO FINKELSTEIN, | : | MEMORANDUM OPINION & ORDER |
| Defendants. | : | |

This matter is before the Court on two Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).  One motion was filed by Defendants Magellan Behavioral Health, Inc. and Alison Johnstone [9] and seeks to dismiss the entirety of the two-count Complaint against them.  The other motion was filed by Defendant Mario Finkelstein [15]; it pertains only to Count I of the Complaint.  Oral argument on the motions was scheduled on February 28, 2013; because Plaintiff's counsel failed to appear, this matter will be decided on the papers pursuant to Fed. R. Civ. P. 78.  For the reasons set forth below, both Motions to Dismiss will be granted.

## Background

**Repetto's employment**

Plaintiff Robert Repetto, a resident of Somerset, New Jersey, began working for the Federal Aviation Administration ("FAA") as an Air Traffic Control Specialist ("ATCS") on or about May 10, 2007.  (Compl. ¶¶ 3, 10.)  As an ATCS, Repetto must maintain "medical eligibility" (also called "ATC Medical Clearance") for two employment-related purposes.  (Compl. ¶ 13.)  First, medical eligibility is a prerequisite to being "scheduled and assigned work as an [ATCS]," (Compl. ¶ 20), since such work

entails performing certain "safety-related duties," (Compl. ¶ 25). Second, medical eligibility is one of the "minimum requirements" that each ATCS employee must meet in order to be eligible for promotions, which come on a set, predetermined training-time schedule. (Compl. ¶¶ 15, 94.)

**Repetto loses his "medical eligibility"**

Repetto lost his medical eligibility in the summer of 2010 and has not been able to regain it, despite repeated attempts to clear his name. His troubles began in or about July 2010, when he was arrested for allegedly driving under the influence ("DUI"). (Compl. ¶ 21.) He promptly notified the FAA of the arrest, (Compl. ¶¶ 22, 24), and upon receiving this information, the FAA informed him that he was "medically incapacitated" and not permitted to perform the safety-related duties of an ATCS. (Compl. ¶ 24.)

On August 31, 2010, the DUI charges against Repetto were "dropped on the merits," he was found not guilty, and the breathalyzer test results were "invalidated" "due to the breathalyzer machine's lack of calibration." (Compl. ¶¶ 26, 28.) Two days later, Repetto provided copies of the not guilty verdict to his superiors and requested that his medical incapacitation status be removed. (Compl. ¶ 27.) Instead of granting the medical clearance, the FAA Medical Offices asked to see the police report and breathalyzer results stemming from the arrest. (Compl. ¶ 28.) Repetto initially resisted, but he eventually provided the information on threat of discipline. (Compl. ¶ 29.)

**Substance abuse assessments begin**

After receiving this information, the FAA decided that it still could not determine whether to grant Repetto's medical clearance. (Compl. ¶ 30.) Thus, it directed Repetto to undergo a substance abuse assessment with a qualified medical person of Repetto's

own choosing. (Compl. ¶ 30.) On or about October 25, 2010, Repetto underwent an evaluation with David Fox of Fox Counseling, who found that he did not have a problem with alcohol and that his prior drinking would not affect his job. (Compl. ¶¶ 31, 32.)

Despite the results of this assessment (which Repetto claims the FAA "received and ignored," see Compl. ¶ 35), the FAA informed Repetto that he needed to obtain a second evaluation. This evaluation was performed by defendant Mario Finkelstein, M.D., who is alleged to be "an independent medical contractor and/or consultant [working] with the FAA." (Compl. ¶¶ 8, 36.) In or about December 2010, Finkelstein[1] determined that Repetto met the FAA criteria for alcohol abuse based on "increased tolerance for alcohol." (Compl. ¶ 37.) Repetto alleges that this finding was based solely upon the results of the invalidated breathalyzer results, since "[n]o other basis for an 'increased tolerance for alcohol' was included [in] or accompanied Finkelstein's December 16, 2010 determination." (Compl. ¶ 38.) Nevertheless, the FAA relied upon Finkelstein's findings and informed Repetto that he was still considered to be medically incapacitated. (Compl. ¶ 43.)

**The final substance abuse assessment**

In or about February 2011, the FAA ordered Repetto to undergo a "third employer-initiated assessment." (Compl. ¶ 48.) Repetto was told that this "would be the only assessment the FAA . . . would accept," since "the Finkelstein assessment was not usable due to Finkelstine's [sic] use of the BAC." (Compl. ¶ 50.) He was also told

---

[1] Notably, "[a]t the meeting with Finkelstein, Finkelstein insisted that [Repetto] sign a statement saying that [Repetto] would not receive the results of the assessment, and that there was no doctor-patient confidentiality." (Compl. ¶ 41.)

3

that "the . . . assessment would be an independent, non biased [sic], FAA 'do over' [sic]." (Compl. ¶ 50.) This assessment was conducted through the FAA's Employee Assistance Program ("EAP"), which is "a voluntary, work-based program that provides confidential assessment, short-term counseling, referral, and follow-up services at no cost to employees who have personal and/or work-related problems that affect attendance, work performance, and/or conduct." (Compl. ¶ 5.) The EAP is administered by defendant Magellan Health Services under contract with the FAA. (Compl. ¶ 6.) This "private health care managing company[, which] offer[s] services in Behavioral Health; Radiology Benefits Management; Specialty Pharmacy Management; and Medicaid Administration," is "contractually required to maintain records on those FAA employees referred to [it]." (Compl. ¶ 6.)

In or about February 2011, Magellan scheduled a face-to-face evaluation for Repetto with Joseph Adams, a Licensed Professional Counselor. (Compl. ¶ 51.) According to the complaint, Defendant Alison Johnstone, a Magellan employee working as a National Case Manager for FAA Employees (Compl. ¶ 7), preemptively told Adams to diagnose Repetto with "psychoactive substance abuse." (Compl. ¶ 52.) She allegedly went so far as to type this diagnosis onto an assessment form before sending it to Adams. (Compl. ¶ 54.) However, Adams found that Repetto had not used alcohol in the past seven months and concluded that he did not have an alcohol abuse problem and did not need treatment. (Compl. ¶ 54.)

Upon receiving the Adams report, Johnstone wrote a "brief summary" of the report and forwarded it to the FAA. (Compl. ¶¶ 53, 56.) Although "Johnstone did not interview or clinically evaluate [Repetto] at any time," (Compl. ¶ 58), she diagnosed

4

Repetto with "[a]lcohol [a]buse"; recommended that he attend "intensive outpatient program three times per week for 6-8 weeks"; said he "should also attend AA meetings twice per week"; and said that this plan would "remain in effect [for] a minimum of one year after [the Plaintiff] has successfully passed his first follow-up test upon resuming safety and security related duties." (Compl. ¶ 57.)  Shortly thereafter, Repetto received a memo directing him to comply with this treatment plan.  (Compl. ¶ 59.)  According to the Complaint, Johnstone's summary did not mention the Adams evaluation at all, and her treatment recommendations "were not recommended by, or supported from any initial treatment needs determined from the Adams clinical assessment."  (Compl. ¶ 58.)

**Privacy Act requests**

After receiving orders to comply with the treatment plan, Repetto submitted a series of Privacy Act requests to correct what he considered to be errors in his FAA medical record so that he could be granted his medical clearance and continue working.  (Compl. ¶¶ 61, 65, 68, 70, 72, 75, 87.)  Although the details of each request are not relevant to deciding the pending motions, the manner in which this allegedly "defective, inaccurate, and irrelevant information" was "creat[ed], maintain[ed], rel[ied] up[on], [and] hid[den]," as well as how Repetto's requests to correct such information were "ignored or improperly denied," form the basis of the Privacy Act claim in Count I.  (Compl. ¶¶ 91, 93.)

**Procedural History**

Repetto filed the instant action against Magellan, the FAA, Johnstone, and Finkelstein in the United States District Court for the District of New Jersey on July 3, 2012.  He has alleged Privacy Act violations by Magellan, Finkelstein, and the FAA in

5

Count I and has asserted a malpractice claim against Magellan, Johnstone, and Finkelstein in Count II.  On August 13, 2012, Magellan and Johnstone moved, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an Order dismissing with prejudice Count I of Repetto's Complaint against Magellan and Count II of Repetto's complaint against Magellan and Johnstone.  On September 12, 2012, Finkelstein moved, pursuant to Rule 12(b)(6), for an Order dismissing with prejudice Count I against him.

### Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a claim based on "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim.  Fed. R. Civ. P. 12(b)(6).  When deciding a motion to dismiss pursuant to Rule 12(b)(6), ordinarily only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration.[2]  See Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990).  It is not necessary for the plaintiff to plead evidence.  Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977).  The question before the Court is not whether the plaintiff will ultimately prevail.  Watson v. Abington Twp., 478 F.3d 144, 150 (2007).  Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly,

---

[2] "Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment."  U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (internal quotation marks and citations omitted) (emphasis deleted).

550 U.S. 544, 570 (2007).

"A claim has facial plausibility[3] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

The Court need not accept "'unsupported conclusions and unwarranted inferences,'" Baraka v. McGreevey, 481 F.3d 187, 195 (3d Cir. 2007) (citation omitted), however, and "[l]egal conclusions made in the guise of factual allegations . . . are given no presumption of truthfulness." Wyeth v. Ranbaxy Labs., Ltd., 448 F. Supp. 2d 607, 609 (D.N.J. 2006) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007) (quoting Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005) ("[A] court need not credit either 'bald assertions' or 'legal conclusions' in a complaint when deciding a motion to dismiss.")). Accord Iqbal, 556 U.S. at 678-80 (finding that pleadings that are no more than conclusions are not entitled to the assumption of truth).

Further, although "detailed factual allegations" are not necessary, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do."

---

[3]This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"" Id.

Twombly, 550 U.S. at 555 (internal citations omitted).  See also Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Twombly, 550 U.S. at 556 (internal citations omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

## Analysis

A. **The Privacy Act claim against Defendants Magellan and Finkelstein must be dismissed because the Act's civil remedy provision applies only to federal government agencies.**

In general, the Privacy Act governs the manner in which every federal government "agency" maintains and discloses information that it collects about individuals.[4]  As the *exclusive* subjects of each of the Act's numerous operative requirements, the federal agencies have a rather large set of rules to follow.  For example, each "agency" is prohibited from disclosing records to another person or agency, except by written request or prior written consent of the individual to whom the record pertains, unless the disclosure falls into one of twelve specified exceptions.  See 5

---

[4] "Agency" is defined by reference to 5 U.S.C. § 552(f) as "each authority of the Government of the United States, whether or not it is within or subject to review by another agency."

8

U.S.C. § 552a(b). "Each agency" must keep track of such disclosures, see 5 U.S.C. § 552a(c), and "[e]ach agency" must also permit an individual, upon request, to access, review, and request amendments to whatever records it maintains on that individual. See 5 U.S.C. § 552a(d). The statute even governs the types of information "[e]ach agency" may gather and the manner in which it is obtained. See 5 U.S.C. § 552a(e). Finally, the statute orders "each agency" to promulgate rules to facilitate these requirements.  See 5 U.S.C. § 552a(f).

To ensure compliance with these provisions, Congress authorized civil remedies. Specifically, "[w]henever any *agency*" either refuses to amend an individual's record in accordance with his request; refuses to comply with an individual's request; fails to maintain a record in an accurate manner; or fails to comply with any other provision of the statute, the individual whose records are in question may "bring a civil action against the *agency*" in a district court of the United States.  See 5 U.S.C. § 552a(g) (emphasis added).  If the plaintiff prevails, "[t]he court may assess *against the United States* reasonable attorney fees and other litigation costs reasonably incurred in any case [brought] under [§ 552a(g)] in which the complainant has substantially prevailed."  5 U.S.C. § 552a(g)(2)(B) (emphasis added).

Thus, the fact that federal agencies are the exclusive subjects of *every* statutory provision strongly suggests that Congress only intended the Privacy Act to apply to such agencies and not to private individuals, and the case law interpreting the scope of the civil remedies provision is consistent with this plain reading analysis. For example, in Fetzer v. Cambria Cnty. Hum. Servs., 384 F. Supp. 2d 813, 815-16 (W.D. Pa. 2005), the court held that "as a matter of law, an action under the Privacy Act cannot be

maintained against" the private individuals in the suit, and accordingly granted the defendants' Rule 12(b)(6) motion to dismiss the Privacy Act counts. This was because "[t]he civil remedies portion of the Privacy Act explicitly states that it applies to agencies, thus eliminating the possibility of a cause of action under the Privacy Act against any *natural person* sued under the act." Id. (emphasis added). Importantly, the Fetzer court noted how § 552a(g)(2)(B) allows courts to "assess *against the United States* reasonable attorney fees and other litigation costs reasonably incurred in any case [brought] under [the civil remedies provision] in which the complainant has substantially prevailed." 384 F. Supp.2 d at 816 (emphasis added). "It would be illogical," the court observed, "to single out the United States to pay attorney fees if the Privacy Act had created a private right of action against parties that are not federal agencies." Id. See also Bruce v. United States, 621 F.2d 914, 916 n.2 (8th Cir. 1980) ("We emphasize that the [Privacy] Act provides for civil remedies only against the agency, not individuals.").

      Courts have applied the same rationale to corporate defendants alleged to have violated the Privacy Act. For example, in Fiorello v. WAMU, No. 10-0273, 2010 WL 5392923 at *10 (D.N.J. Dec. 22, 2010), Judge Wolfson held that "as a matter of law, an action under the Privacy Act cannot be maintained against LPS," a company providing foreclosure services to financial lenders. Likewise, in Surgick v. Cirella, No. 09-3807, 2010 WL 2539418 at *5 (D.N.J. June 25, 2010), Judge Hillman dismissed a Privacy Act complaint against K. Hovnanian Enterprises, Inc., "a private corporation," because the Privacy Act "do[es] not generally apply to private entities." See also Unt v. Aerospace Corp., 765 F.2d 1440, 1447-48 (9th Cir. 1985) (upholding dismissal of Privacy Act

10

complaint against Aerospace, a "private not-for-profit corporation [doing] business with the United States Government," because plaintiff "failed to demonstrate that the federal government's control over Aerospace . . . [was] sufficiently pervasive to confer governmental agency status upon it").

Despite overwhelming case law to the contrary, and without citing any case law for support, Repetto nevertheless argues that § 552a(m) is the vehicle through which Privacy Act claims may be sustained against corporations contracting with the government.  While section 552a(m) applies the Privacy Act to government contractors like Magellan, it does so in a very narrow manner.  Specifically, "[w]hen an agency provides by a contract for the operation by or on behalf of the agency of a system of records to accomplish an agency function, the agency shall, consistent with its authority, cause the *requirements* of this section to be applied to such system."  Id. (emphasis added).  The key word here is "requirements," and when read in the context of § 552a (i.e., "this section"), this word only seems to address the operative, privacy-related provisions of the Act discussed above.  The civil remedies provision found in § 552a(g) cannot reasonably be considered a "requirement" as that word is commonly understood.  If Congress wanted government contractors to be subject to suit for violations, it could have included the word "remedies" in § 552a(m).  Instead, Congress deliberately ensured that only agencies were the subjects of the requirements *and* the remedies, but only extended the Act's requirements to the government contractors.[5]

---

[5] In Repetto's memorandum opposing defendant's motion to dismiss, he cites to FAA National Policy Order 1280.1B and Magellan's handbook to support his interpretation of the Privacy Act.  However, each document actually supports the above analysis.  In particular, both documents *regularly* mention contractors' obligations to

Thus, since Magellan is alleged to be only a "private health care managing company" and a "contractor for the FAA" (Compl. ¶ 6), and since Finkelstein is alleged to be only "an independent medical contractor and/or consultant who works with the FAA," (Compl. ¶ 8), Count I will be dismissed as against them because the Plaintiff has failed to allege that either of these parties is an "agency" to which the civil action provision of § 552a(g) would apply.[6]

**B.      The medical malpractice count against Defendants Magellan and Johnstone must be dismissed because, even if they owed a professional duty to Repetto, neither party is alleged to be a health care provider for purposes of a medical malpractice claim.**

In Count II of his complaint, Repetto alleges that "Magellan, Finkelstein, and Johnstone all and each undertook to medically evaluate, diagnose, and/or treat" Repetto, but that they "all failed to conform to the relevant standard of care" by diagnosing him as "suffering from alcohol abuse when he did not meet such definition and when his records and history did not support such diagnosis." (Comp. ¶¶ 96, 97, 98.)  In support of their motion to dismiss, Defendants Magellan and Johnstone point out that Repetto "has not alleged that Magellan and Johnstone are health care providers

---

maintain records in a manner consistent with the Privacy Act's operative requirements. Further, Policy Order 1280.1B "describes the circumstances under which an individual may seek court relief in the event that *the FAA* violates any requirement of the Privacy Act or any rule or regulation promulgated there under." Fed. Aviation Admin., National Policy Order 1280.1B C-7 (2011), http://www.faa.gov/documentlibrary/media/order/1280.1b.pdf (emphasis added). This Policy Order repeatedly refers to the FAA in its civil remedies discussion, and does not ever mention government contractors.  Id.

[6] In his motion to dismiss, Finkelstein raises the argument that the Privacy Act claim against him is barred by Repetto's written consent to the disclosure of his psychiatric evaluation.  To the extent that Finkelstein is not subject to suit under the Privacy Act, this argument need not be addressed.

12

or that he was their patient." (Def.'s Mem. Supp. Mot. Dismiss 6.) Instead, Magellan is alleged to be a "private health care managing company," and Johnstone is alleged to be an employee of Magellan working as "an EAP National Case Manager." (Comp. ¶¶ 6, 7.) This is critical because, according to the Defendants, an action for medical malpractice "is a kind of tort action in which the traditional negligence elements are refined to reflect the professional setting of a *physician-patient relationship*." Verdicchio v. Ricca, 179 N.J. 1, 23 (2004) (emphasis added). Thus, the moving Defendants essentially argue that since a 'medical provider' relationship is not alleged, the malpractice claim must fail.

Repetto responds with the (correct) proposition that in general, a patient or client relationship is not a critical requirement to sustain a professional malpractice claim when the professional examines the plaintiff on behalf of a client, such as a prospective employer. (Pl.'s Mem. Opp'n. Def.'s Mot. Dismiss 3, 5) (citing Beadling v. Sirotta, 41 N.J. 555 (1964); Ranier v. Frieman, 294 N.J. Super. 182 (App. Div. 1996)). In Beadling, the plaintiff sought employment with the defendant Langston, who required him to take a pre-employment physical. 41 N.J. at 557. Langston referred him to the plant physician, who in turn sent him to defendant Dr. Sirotta for a chest X-ray. Id. Dr. Sirotta was alleged to have negligently reported that an abnormality appearing on the X-ray was evidence of an active tuberculosis infection rather than a healed tuberculosis scar, and this negligence was alleged to be the cause of defendant Langston not hiring the plaintiff. Id. In *dicta,* the New Jersey Supreme Court noted, "whether or not a physician-patient relationship exists, within the full meaning of that term, we believe that a physician in the exercise of his profession examining a person *at the request of an employer* owes that person a duty of reasonable care." Id. (emphasis added).

13

Nevertheless, the Court did not feel the need to "decide the scope of the duty owed to such examinees," and thus assumed that even if there was a duty, there was "no evidence of its breach." Id. at 562.

Seizing upon this language in Beadling, as well as summarizing the trend in later New Jersey Supreme Court case law, the Appellate Division in Ranier v. Frieman, 294 N.J. Super. 182 (App. Div. 1996), held that "a professional's duty of care is owed *not only* to his patient or client *but also* to those third parties who will foreseeably and reasonably rely on his skill and care in the performance of a particular professional undertaking." 294 N.J. Super. at 189 (emphasis added). Thus, the court held, a "physician retained by the Department of Labor . . . to examine [the plaintiff] for social security disability benefits has a duty to the examinee to exercise reasonable professional care in rendering a diagnosis, . . . at least with respect to the symptoms and complaints on which the examinee has based the disability claim." Id. at 184.

However, even if Magellan and Johnstone owed a professional duty to the FAA (as their client) and to Repetto (as the third party who will "foreseeably and reasonably rely on [their] skill and care," Ranier, 294 N.J. Super. at 189), the Complaint cannot plausibly sustain a claim of *medical* malpractice. (Def.'s Reply in Supp. Mot. Dismiss 3.) As the Defendants point out, this is because "Plaintiff's Complaint does not allege that Defendants are health care *providers*, that Plaintiff was their *patient*, or that they even *examined* Plaintiff." (Def.'s Reply in Supp. Mot. Dismiss 3) (emphasis added). Instead, Magellan is alleged to be a "private health care managing company," and Johnstone is alleged to be an employee of Magellan working as "an EAP National Case Manager." (Comp. ¶¶ 6, 7.) This is in stark contrast to Beadling and Ranier, where the

14

professionals accused were *medical professionals* (a physician and an ophthalmologist, respectively), and the plaintiffs were *examinees* of those medical professionals. Moreover, Plaintiff has not cited any case law holding that a medical malpractice claim can lie against entities such as Magellan or Johnstone, and independent research has been equally futile.

## Conclusion

For these reasons,

IT IS ORDERED on this 19th day of March, 2013, that the motion filed by Defendants Magellan Behavioral Health, Inc. and Alison Johnstone [9] to dismiss the entirety of the two-count Complaint against them is hereby GRANTED.

IT IS FURTHER ORDERED that Defendant Mario Finkelstein's motion to dismiss Count I of the Complaint against him [15] is hereby GRANTED.

/s/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ
U.S.D.J.